McDONALD v. JOHN HANCOCK MUT. LIFE INS. CO.

(Supreme Court, Appellate Division, Fourth Department. April 10, 1897.)

CONTRACTS—ILLITERACY OF PARTY—PRESUMPTION.
   There is no presumption that a party to a contract was unacquainted with its contents because he was unable to read.

Appeal from circuit court.

Action by Mary McDonald against the John Hancock Mutual Life Insurance Company on a life insurance policy. The complaint was dismissed at the close of the evidence, and plaintiff appeals. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

James Devine, for appellant.
William S. Jenney, for respondent.

FOLLETT, J. This action was begun February 13, 1894, to recover on a policy of life insurance. May 7, 1890, the defendant, in consideration of a weekly payment of 15 cents, insured the life of Austin Flannagan, then aged 17 years at his next birthday, for $306, payable, in case of death, to his sister, Mary McDonald, the plaintiff herein. The weekly payments have been made as provided by the policy. November 14, 1893, the insured died suddenly of hemorrhage from his lungs. November 16, 1893, proofs of death in due form were verified, and immediately thereafter were served on the defendant.

The defendant interposes three defenses to this action: (1) That the insured falsely stated in his application for the policy that he was in good health, and that his last illness, when attended by a physician, was four years before the date of the application, when he was sick of malaria; (2) that the insured stated he was insured by the defendant under policies No. 469,579 and No. 820,030, and concealed the fact that defendant had issued three policies on his life, and that another company had issued two policies on his life; (3) that the plaintiff had not an insurable interest in the life of the insured.

When the policy in suit was issued, and when the insured died, there were five policies outstanding on the life of Austin Flannagan,

—three issued by the defendant, one payable to the plaintiff, one payable to the mother of Austin Flannagan, and one payable to Nora McCrary, an aunt of Austin Flannagan; two issued by the Metropolitan Life Insurance Company, one payable to the mother of Austin Flannagan, and one payable to the plaintiff. These facts are not disputed. The following are the questions and answers in the application relating to existing insurance:

"(8) Is the person's life now insured? Yes. If so, state in what companies, and what amounts, and, if in this company, give number of policy. Yes. Hancock, 469,579—820,030."

The policy contains the following provision:

"If any statement or answer in said application is in any respect untrue, if any assignment hereof is made, if any policy on the life of said insured previously issued by this company is now in force without permission to hold this policy indorsed thereon by the president or secretary, * * * then this policy shall be void."

The application contains the following:

"The following statements are made, which, including those made to the medical examiner shall form a part of the contract for insurance; and, if in any respect untrue, the policy issued on this application shall be void."

The existence of the third policy issued by the defendant and of the two policies issued by the Metropolitan Life Insurance Company was not disclosed. The statement in the application in respect to insurance then existing was untrue.

The first clause in the certificate of the medical examiner is as follows:

"Questions to be asked only by the medical examiner, and answered by the person examined: * * * (7) When did you last consult a doctor, except for confinement, and what for? If for a cold, state full particulars, and whether predisposed. 4 years ago; malaria. (8) Have you ever had any serious illness or injury? No."

In September, 1886, Austin Flannagan, Sr., and five of his family, including the plaintiff and the insured, Austin Flannagan, Jr., had typhoid fever. Three of the family died and three survived. This was testified to by the attending physician, and also by the plaintiff. The plaintiff testified that the disease was malarial fever, but the doctor testified that he might have so termed it at the beginning, but that it developed into typhoid fever, and "I suppose it was generally understood in the family that the boy had typhoid fever." There was no dispute about these facts. The statement in the application in respect to the last serious illness of the insured was untrue.

The plaintiff attempts to avoid the effect of these untruthful statements by showing that the insured could not read, and could only write his name. The application was written by John A. Flannery, an agent for the defendant. At the time of the trial he was so ill that he was unable to testify. The plaintiff called Clinton J. Wheaton, defendant's assistant superintendent at Syracuse, who testified that the application was written by John A. Flannery, in his presence, and in the presence of the plaintiff, and that the questions in the application were put to her, and she answered them; that the insured was not present. The plaintiff testified that she was pres-

ent when John A. Flannery wrote the application; that the insured was not; but she does not state whether Wheaton was present. She testified that John A. Flannery wrote the application without asking her a question, and she also testified that the examining physician and Austin Flannagan were together at her house on the following Sunday, and that she saw her brother sign papers. The certificate of the medical examiner is dated April 6, 1890, which was Sunday; but the application of Austin Flannagan is dated April 7, 1890, which was on Monday, and is witnessed by "J. A. Flannery, Solicitor." The presumption is that these papers were executed when dated. There is no evidence in the case tending to show that the application of the insured, executed April 7, 1890, was not read to him. The presumption is that a person able or unable to read, who executes a contract, knows its contents, and it will not do to hold that because a person is unable to read a contract the presumption is that he was unacquainted with its contents. The evidence fails to show that the defendant's agent practiced any fraud in procuring this application. It is evident that the mother, sister, and aunt thought that it was desirable to have the life of Austin Flannagan insured, and that the defendant's agent was anxious to issue as many policies on the life as he could. No question of fact was presented by the evidence, and the nonsuit was properly granted.

The judgment should be affirmed, with costs. All concur.